UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRYAN CLAYTON ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-0360** |
| **WARDEN TRAVIS DAY, ET AL.** | **SECTION "L" (4)** |

**ORDER AND REASONS**

Plaintiff Bryan Clayton Roberts ("Roberts") filed a Motion to Supplement Complaint (ECF No. 11) and Motion to Preserve Video Evidence (ECF No. 12) in connection with his *pro se* and *in forma pauperis* complaint brought under 42 U.S.C. § 1983 challenging the conditions of his confinement.

**I.      Motion to Supplement Complaint (ECF No. 11)**

   **a.   Background**

In the motion to supplement his complaint, Roberts alleges multiple claims of retaliation by prison officials since the commencement of his lawsuit. Roberts states that after his telephone conference with the Court on March 20, 2025, prison officials falsified a disciplinary report regarding a contraband violation by planting a half sheet of paper that was soaked in an unknown liquid in a locker that did not belong to him. ECF No. 11 at 1. He further alleges that during the disciplinary proceeding, counsel violated his right to plead not guilty and order the board to review the video camera footage of the time in question. *Id*. Additionally, Roberts states that he lost several personal items that he was not able to secure as a result of being placed in segregation including a tablet, belt, art supplies, and clothing. *Id*. at 2. Finally, he claims that prison officials are retaliating against him as a means to not honor his geographical transfer to David Wade Correctional Center. *Id*. at 4.

In support of these claims, Roberts provided a disciplinary report from March 20, 2025. ECF No. 11-1 at 2. The report states that Lt. Jessie Williams conducted an intoxication interview with Roberts due to him staggering on the yard and appearing in a disoriented state. *Id*. Lt. Williams writes that Roberts had slurred speech and admitted to taking something to alter his state of being. *Id*. After taking him to medical, Roberts was escorted to "Sun INV/SEG." *Id*. A second disciplinary report was provided from April 8, 2025, stating that a shake down was conducted on Roberts after Csm. Mitchell saw him acting in a suspicious manner by going into a locker that did not belong to him. *Id*. at 3. Csm. Mitchell reported finding a half sheet of paper soaked in an unknown liquid that tested positive for synthetic cannabinoids. *Id*.

Roberts also claims that prison officials are retaliating against him by refusing to honor his geographical transfer from Rayburn Correctional Center ("RCC") to David Wade Correctional Center ("DWCC") and asks that the Court immediately order his transfer. ECF No. 11 at 4. In support of his claim, Roberts attached letters from officials at RCC regarding his transfer request. In a letter dated May 16, 2024, Roberts is informed his that geographical transfer request was submitted in January, but that it is up to DOC headquarters as to whether it will be approved. ECF No. 11-2 at 2. In a second letter dated September 9, 2024, the Assistant Warden informs Roberts that his name is on the transfer list for DWCC. *Id*. at 3.

In his motion, Roberts states that on February 10, 2025, he was geographically transferred to DWCC, but since he still had upcoming medical appointments in New Orleans, Louisiana, at University Medical Center ("UMC"). ECF No. 11 at 4. Roberts states that he was sent back to RCC under medical orders to be cleared by UMC then transferred back to DWCC. *Id*. He states that on March 31, 2025, he was released by UMC so he could be transferred from RCC back to DWCC. *Id*. Roberts provides no additional documentation corroborating the transfer approval or

related medical delay. Given that he still remains at RCC, Roberts alleges that prison officials are refusing to honor his transfer out of retaliation.

b. **Applicable Law and Analysis**

Under Federal Rule of Civil Procedure 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The Fifth Circuit has indicated that, when determining whether to permit supplementation, courts should consider the same factors that apply when determining whether to grant leave to amend. See *Chemetron Corp. v. Business Fund, Inc.*, 682 F.2d 1149, 1194 (5th Cir. 1982)(citation omitted)(vacated on unrelated grounds by *Chemetron Corp. v. Bus. Funds, Inc.*, 460 U.S. 1007 (1983)).

Those factors include: "(1) undue delay, (2) bad faith or dilatory motive by the movant, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, or (5) futility of amendment." *Chemetron Corp.*, 682 F.2d at 1194. Supplementing is futile if the supplemented allegations would fail to state a claim upon which relief could be granted. See *Connor v. Castro*, 719 F. App'x. 376, 380 (5th Cir. 2018)(denying supplementation because the supplemented allegations would not state a claim under § 1983); see also *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Although Rule 15(a) provides that leave to amend can be freely granted, Rule 15(d) does not contain a similar provision in regard to supplementation. *Connor*, 719 F. App'x at 379-80.

Here, Roberts raises several claims of retaliation, which are all distinct from his original claims and names new defendants. Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

3

remedies as are available are exhausted." 42 U.S.C. § 1997e. Roberts claims that prison officials retaliated against him because he filed and continues to pursue this suit. Roberts provides no supporting documentation that he has exhausted his new claims. See *Torns v. Miss. Dep't of Corr.*, 301 Fed. App'x. 386, 388 (5th Cir. 2008)("One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion.")

As Roberts did not exhaust his relation claims before filing this suit, there is no substantial likelihood that he will succeed on the claims' merits and providing him leave to supplement would be futile. See *Garcia v. Hackman*, No. 10-311, 2011 WL 2457918, at *20 (S.D. Tex. June 16, 2011) (finding an amendment to add a retaliation claim futile because the claim was "plainly" unexhausted); *Huff v. Crites*, No. 10-225, 2010 WL 3909357, at *3 (S.D. Tex. Oct. 1, 2010) (finding that amendment to add a claim of retaliation for filing suit was futile because the inmate-plaintiff did not first exhaust his complaint "through the prison grievance system."); *Authement v. Terrebonne Par. Sheriff's Office*, No. 09-5837, 2009 WL 4782368, at *6 (E.D. La. Dec. 3, 2009).

Furthermore, the court is conducting its statutory frivolousness review of Roberts's complaint pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e, as applicable. No party has been served with summons or provided the opportunity to respond to Roberts's complaint, the factual allegations, or the substantive relief he seeks in the complaint and in his motion to supplement. Thus, the Court should not allow Roberts to supplement his complaint and raise retaliation claims.

II.     **Motion to Preserve Video Evidence (ECF No. 12)**

    a.  **Background**

In the motion to preserve video evidence, Roberts seeks an order compelling the Warden of RCC to preserve video evidence from March 20, 2025 until April of 2025 in connection with

his proposed supplemental claims of retaliation. ECF No. 12 at 1. Without the video evidence, Roberts states that he will not be able to fully present his claims of retaliation. *Id*.

### b. Applicable Law and Analysis

Discovery in a civil proceeding is governed by Rules 26-37 of the Federal Rule of Civil Procedure. Further, the duty to preserve material evidence arises once a party knows or should have known that litigation is imminent; it does not depend on a court order. See *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). If a party fails to take necessary steps to preserve electronically stored evidence or intentionally destroys evidence, that party may be sanctioned. FED. R. CIV. P. 37(e)(2); *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)).

Defendants' preservation of evidence obligation exists even without a court order. Additionally, Roberts's request pertains to discovery related to the retaliation claims that he seeks to supplement his complaint with, which has yet to be allowed. As previously noted, the court is still conducting its statutory frivolousness review of Roberts's complaint. "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea v. Wood*, 47 F. 3d 1427, 1434 (5th Cir. 1995); see also FED. R. CIV. P. 26(d). Thus, until completion of the Court's frivolousness review, discovery is premature and will not be allowed.

### III. Conclusion

For the reasons stated herein,

**IT IS ORDERED** that plaintiff Bryan Clayton Roberts's Motion to Supplement Complaint (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Roberts's Motion to Preserve Video Evidence (ECF No. 12) is **DENIED**.

New Orleans, Louisiana, this 28th day of May, 2025.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**