UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRYAN CLAYTON ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-0360** |
| **WARDEN TRAVIS DAY, ET AL.** | **SECTION "L"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). On March 20, 2025, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.   Background**

    **A.   Complaint (ECF No. 1)**

Plaintiff Bryan Clayton Roberts ("Roberts") is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC"). ECF No. 1, ¶II, at 2. Richards filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against the State of Louisiana through the Louisiana Department of Public Safety and Corrections ("DOC"), DOC Secretary Gary Westcott, RCC Warden Travis Day, RCC Assistant Warden Floyd Brooks, and a group of individuals listed as "all nurses." ECF No. 1, ¶III(B)-(C), at 3. He asserts that he sustained physical injuries to his

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under FED. R. CIV. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] ECF No. 8. Plaintiff was sworn before testifying and the hearing was electronically recorded.

neck and left shoulder as a result of the defendants' reckless negligence and deliberate indifference to his serious medical need. *Id.*, ¶IV, at 3.

Roberts alleges that on January 9, 2024, around 12:50-1:00 a.m., Sgt. Coleman and Lt. Dillon Tynes told him to close all the windows around one of the prison dormitories because strong winds were blowing the rain through the windows. ECF No. 1-1, ¶IV, at 4. After closing the windows, Roberts was running back inside when Sgt. Coleman opened the back door telling him to come through it. *Id*. As Roberts went to turn through the door, he slipped and fell on his left shoulder causing injury to his neck and shoulder. *Id*. Roberts claims Sgt. Coleman witnessed the fall and did nothing. *Id*. Roberts claims he was denied medical treatment and was made to wait until later that morning to make a "SDE" (self-declared emergency). *Id.*, ¶V, at 5.

Roberts states on the morning of January 9, 2024, he made a SDE seeking medical care for his physical injuries. ECF No. 1-1, ¶VI, at 5. He was examined by Nurse Karen and Dr. Juan Martinez, who allegedly jerked his arm straight up causing further injury to his shoulder. *Id*. Roberts claims Dr. Martinez and his staff continued to disregard his injuries, believing that nothing was wrong. *Id*. He asserts he made nine additional sick calls in the following weeks, each time being seen by a nurse or Dr. Martinez, who disregarded his need for medical treatment. *Id.*, ¶¶VI-XV, at 5-7. Roberts states he wrote letters to Assistant Warden Floyd Brooks and Medical Director Lesley Wheat about his denial of medical care, but no action was taken. *Id.*, ¶¶XVI-XVII, at 7-8. He claims that after nine and a half months of defendants' deliberate indifference, he was referred to University Medical Center, New Orleans, to see an orthopedic bone specialist for his shoulder. *Id.*, ¶XVIII, at 8.

Roberts claims on an unknown date, he was notified by RCC security that he had a hospital trip where he saw the orthopedic bone specialist at University Medical Center and an MRI was

2

ordered on his neck and shoulder. ECF No. 1-1, ¶XIX, at 8-9. After receiving the MRI, he was informed his rotor cuff was ripped in his shoulder, damaging his neck. *Id*., ¶XXI, at 9. On December 5, 2024, Roberts had surgery to place a plate and screws in his neck. *Id*., ¶XXIII, at 9. When he was returned to the infirmary at RCC on December 7, 2025, he claims he felt unsafe when he was denied something to eat. *Id*., ¶XXIV, at 9-10. He thereafter requested that he be moved back to the dorm to get better assistance from fellow inmates. *Id*.

On December 31, 2024, Roberts was taken to a follow-up appointment at University Medical Center. ECF No. 1-1, ¶XXVIII, at 11-12. He claims Sgt. O'Keefe told him to "keep his mouth shut" and let the doctor's take his stitches out so they could get out of there. *Id*. On January 14, 2025, Roberts claims he was forced to work despite only being out of the hospital for one month and nine days and not properly given time to heal. *Id*., ¶XXIX, at 12. He states he was seen by Dr. Martinez on January 17, 2025, when he explained the surgeon told him his neck was healing wrong. *Id*., ¶XXX, at 12-13. Roberts asserts he told Dr. Martinez the surgeon ordered him three medications and orthopedic shoes. *Id*. He claims Dr. Martinez had no knowledge of his December 31 follow-up appointment and told him that the surgeon stated he was healing and had no need for a no duty status. *Id* Roberts claims Dr. Martinez ordered him some muscle relaxers, but when he went to pill call the following days the medications the surgeon had ordered were not in. *Id*. ¶XXXI, at 13

As relief, Roberts requests compensatory and punitive damages in the amount of 4 million dollars. ECF No. 1, ¶V, at 3. Roberts claims defendants have threatened his life with physical violence by placing inmates in the dorm to jump on him for exercising his rights through the Administrative Remedy procedure. ECF No. 1-1, ¶XXXI, at 15. Additionally, he asks the Court

to remove him from RCC's custody and transfer him to David Wade Correctional Center where he is already backlogged to be shipped. *Id*. ECF No. 1, ¶V, at 3.

B. *Spears* **Hearing**

During the *Spears* Hearing, Roberts testified that he had surgery on his neck from his C3 to his C6 vertebrae in December of 2024. He stated the surgeons gave him recommendations to heal that were not follow by RCC. Roberts testified that one of the nurses, named Jessica Aford, did not think anything was wrong when she saw him, but something was wrong. He stated he is claiming denial of medical care because he could have gotten the surgery sooner. Roberts testified that after the surgery, his surgeon recommended three types of medication which were not ordered by RCC staff. He stated one of the recommended medications was a narcotic. Roberts testified his neck has gotten a little worse after surgery, as it was not healing right. He stated he as a result of this, he must go back and forth from New Orleans. Roberts testified he is not getting medical treatment now nor is he receiving medication.

Roberts testified he named RCC Warden Travis Day as a defendant because he is over the entire staff at the facility. He stated he named RCC Assistant Warden Floyd Brooks because he is the warden over medical and mental health. Roberts also testified he wrote Warden Brooks about the medical issues he was having and claims Warden Brooks denied that anything was wrong. Roberts testified that he named DOC Secretary Gary Westcott as a defendant because he is over Warden Day, but did not know if Gary Westcott had knowledge of or was aware of the events that occurred.

C. **Motion for Preliminary Injunction (ECF No. 5)**

After the filing of his complaint, Roberts filed a motion requesting issuance of a temporary restraining order against RCC officials to immediately have him transferred to Elayn Hunt

Correctional Center until he is medically released from University Medical Center. ECF No. 5 at 4. He also requests a temporary restraining order against Warden Travis Day to desist from taking any action to interfere with his efforts in litigating his complaint. *Id*. at 5. Roberts claims he was geographically transferred to David Wade Correctional Center on February 10, 2025, but had to return to RCC as DWCC could not take him to New Orleans for his treatment at University Medical Center. *Id*. at 4. In support of his motion, Roberts details instances stemming from July of 2023 until January of 2024 where he states RCC officials knew of a substantial risk to his harm by placing him with inmate Joseph Davis who extorted and jumped on him. *Id*. at 2-4.

## II.     Standards of Review

### A.     Statutory Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly

5

baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.      Preliminary Injunction**

An injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citation omitted). An injunction is to be the exception, not the rule. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Furthermore, in the prison setting, requests for an injunctive relief are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management, including prison discipline and classification of inmates. *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (affirming denial of injunction to obtain release from administrative segregation).

In addition, injunctive relief is to prevent future violations, not to punish a defendant for alleged past behavior. *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978); *see also Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) ("[t]o pursue an injunction . . . the [plaintiff] must allege a likelihood of future violations of their rights by [the defendants] not simply future effects from past violations."). For these reasons, "[s]peculative injury is not sufficient." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not

sufficient; there must be more than an unfounded fear on the part of the applicant."); *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

The Supreme Court has explained that a plaintiff seeking an injunction must show that: (1) he has suffered an irreparable injury, (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) a remedy at equity is warranted when considering the balance of hardships between the plaintiff and defendant, and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *United Motorcoach Association, Inc. v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017). These standards are essentially the same for both preliminary and permanent injunctions, except to obtain a permanent injunction, the plaintiff must normally show actual success on the merits rather than a mere likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (listing "success on the merits" as a prerequisite for obtaining a permanent injunction).

In keeping with this, Fed. R. Civ. P. 65 sets forth the basic framework for the issuance of a preliminary injunction or temporary restraining order. Under this rule, a preliminary injunction may issue *inter alia* "only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). For a temporary restraining order to be issued under Rule 65 without notice to all parties, a plaintiff is required to present "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to [plaintiff] before the adverse party can be heard in opposition[.]" FED. R. CIV. P. 65(b)(1)(A). The plaintiff also must certify "in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65 (b)(1)(B).

7

### III. Analysis

#### A. Motion for Preliminary Injunction Should Be Denied

Roberts's motion for a preliminary injunction bears no indication that he served defendants or made any effort to notify defendants before filing his motion for a temporary restraining order. Despite this lack of notice, Roberts's motion is absolutely devoid of any argument or reasons why a TRO or injunctive relief should be issued in this case.

Considering the factors listed above, Roberts has not demonstrated that he is in danger of future injury or harm at the hands of the RCC prison officials. His claims that he fears retaliation for having filed this § 1983 complaint are conclusory. Given that Roberts filed this lawsuit February 20, 2025, and the alleged conduct by RCC officials happened between July of 2023 and January of 2024, he has provided no facts or allegations which remotely suggest that he has been or will be retaliated against. He has not alleged to have suffered an irreparable injury or one not subject to remedial compensation. A party's injury, whether emotional or physical, and other harm are not irreparable for purposes of Rule 65 if an adequate alternate remedy in the form of monetary damages is available. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008). As discussed below, Roberts has not presented a non-frivolous claim in his complaint to support any suggestion that the named defendants have cause him irreparable harm or are likely to cause future harm to entitle him to injunctive relief.

Thus, Roberts's motion is insufficient to state a basis for this court to consider or issue a temporary restraining order or other injunctive relief at this time. The motion should be denied.

#### B. Frivolousness Review

Dismissal for frivolousness or failure to state a claim under § 1915(e)(2)(B)(ii) and § 1915A(b)(1) "turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v.*

8

*Bank of America, N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014)). The plaintiff's facts and allegations must be sufficient to allow the Court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citation omitted). For the following reasons, Roberts's factual allegations fall far short of what is required to state a non-frivolous claim against the defendants.

    a)    <u>**State of Louisiana through the DOC and Defendants in an Official Capacity**</u>

Roberts named the State of Louisiana through the DOC, DOC Secretary Gary Westcott, RCC Warden Travis Day, RCC Assistant Warden Floyd Brooks, and "all nurses" as defendants. ECF No. 1, ¶III(B)-(C), at 3. Roberts states he is suing all defendants in their official capacities. ECF No. 1-1, ¶III, at 4. When a constitutional violation is alleged, § 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). A plaintiff must prove both the constitutional violation and that the action was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981). For the reasons that follow, the State through the DOC and its employees, in their official capacities, are not persons suable under § 1983 and are otherwise immune from suit for damages. *Will v. Mich. Dep't of St. Pol.*, 491 U.S. 58 (1989); *Stotter v. Univ. of Tex.*, 508 F.3d 812, 821 (5th Cir. 2007).

When a state actor is sued in his or her official capacity, the action is considered to be one taken against the entity the official represents. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). Secretary Gary Wescott is the secretary of the DOC, which is a department within the Louisiana state government. La. Stat. Ann. § 36:401; *Champagne v.*

*Jeff. Par. Sheriff's Off.*, 188 F.3d 312, 313-14 (5th Cir. 1999) (finding the DOC to be a Louisiana state agency). The Warden, Assistant Warden, and "all nurses" are employed at RCC, which is a state-owned, DOC jail facility. *See, e.g., Francois v. Rigdon*, No. 08-3485, 2009 WL 1379723, at *4 (E.D. La. May 14, 2009); *Demouchet v. Rayburn Corr. Ctr.*, No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). Thus, suit against defendants Wescott, Day, Brooks, and any nurses, each in their official capacity, is the same as suit against the DOC, an arm of the State of Louisiana. *Francois*, 2009 WL 1379723, at *4. The State, through the DOC, has also been named as a defendant in this case.

However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. By including the DOC and the other defendants in their official capacities, Roberts failed to identify a person for purposes of suit under § 1983.

Furthermore, under the Eleventh Amendment to the United States Constitutions, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's consent." *Rodriguez v. Tex. Comm'n on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000) (addressing U.S. Const. amend. XI). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Med RX/Sys., P.L.L.C. v. Tex. Dep't of St. Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990)). For Eleventh Amendment purposes, the DOC is considered an arm of the State of Louisiana since any money judgment against it or its facilities and subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. Mar. 29, 1985); *Champagne*, 188 F.3d at 313-14.

The United States Fifth Circuit Court of Appeals has summarized the impact of the Eleventh Amendment on suits brought pursuant to § 1983:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La. Rev. Stat. Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

*Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); *Champagne*, 188 F.3d at 313-14; *McGuire v. Lafourche Par. Work-Release Facility*, No. 09-6755, 2009 WL 4891914, at *3-4 (E.D. La. Dec. 4, 2009).

While a State may expressly waive this Eleventh Amendment sovereign immunity,[3] Louisiana has by statute declined to do so. *See* La. Stat. Ann. § 13:5106(a); *Cozzo*, 279 F.3d at 281. In addition, Congress has not abrogated Eleventh Amendment immunity for cases brought pursuant to § 1983. *See Id.*; *see also Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States.").

Therefore, Eleventh Amendment immunity is applicable to § 1983 claims against the State of Louisiana, the DOC, and by extension, official-capacity claims against Louisiana state officials. *See K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010); *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210, at *1 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 320 (W.D. La. June 14, 1995) ("A suit against any state correctional center would be

---

[3] *See Seminole Tribe v. Florida*, 517 U.S. 44, 53-54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986).

11

suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. Sept. 28, 1978)). This Court, therefore, lacks jurisdiction over Roberts's claims against the DOC as a state agency, and the other defendants in their official capacities. *Bryant v. Texas Dep't of Aging and Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ("When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim.").

Thus, Roberts's claims against the State of Louisiana through the DOC and against Secretary Wescott, Warden Day, Assistant Warden Brooks, and "all nurses," each in their official capacity, should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A, and as applicable, 42 U.S.C. § 1997e, as frivolous, for lack of jurisdiction, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant.

### b) <u>Claims Against Defendants in an Individual Capacity</u>

Roberts named the defendants Secretary Wescott, Warden Day, Assistant Warden Brooks, and "all nurses" in their individual capacity. ECF No. 1-1, ¶III, at 4. To succeed on an individual-capacity § 1983 claim, a plaintiff must establish that the defendant, while acting under color of state law, was personally involved in the deprivation of a right secured by the laws or constitution of the United States, or that the defendant's wrongful acts were casually connected to such a deprivation. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). "It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020).

> i. **Secretary Wescott, Warden Day, and Assistant Warden Brooks**

Roberts provides no specific factual basis for naming Secretary Westcott or Warden Day as defendants. A state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Roberts does not claim that Warden Day or Secretary Wescott were involved in the alleged denial of medical care. Roberts testified that he wrote Assistant Warden Brooks a letter explaining his ongoing issues with medical care, but that Brooks denied anything was wrong. In his response, Brooks explains that he reviewed Roberts's medical record, indicating that the X-ray done to Roberts's shoulder showed no injury. ECF No. 1-5 at 2. Brooks advised Roberts that if he was continuing to have issues, he needed to make a routine sick call. *Id*. There are no facts to support that Assistant Warden Brooks was personally involved in the alleged denial of medical care. Without some direct involvement in the alleged inadequate medical care, Roberts has failed to state a claim or basis for the three defendants to be held liable under § 1983 in their individual capacities.

In addition, these officials cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). Roberts testified that he brought suit against Warden Day because of his role over the facility, and in turn, brought suit against Secretary Wescott because he is over Warden Day. In a similar vein, Roberts testified that he named Assistant Warden Brooks

13

because he is the warden who oversees medical and mental health. A supervisory official may be held liable for his subordinates' actions only if the named official issued an order or implemented an unconstitutional policy that causally resulted in plaintiff's injury. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Roberts has not alleged any such level of involvement or liability against Secretary Wescott, Warden Day, or Assistant Warden Brooks.

Therefore, Roberts's claims against Secretary Wescott, Warden Day, and Assistant Warden Brooks, each in his individual capacity, must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### c)     All Nurses

Roberts also references "all nurses" as defendants in connection with an administrative grievance procedure. ECF No. 1, ¶III(C), at 3. These broad groups of people are not properly named defendants. Instead, a § 1983 action must be filed against an *actual identified person* who violated a constitutional right, not a department or general staff group at the jail. *See, e.g., Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n.8 (E.D. La. Feb. 2, 2006) ("Medical Staff" is not a juridical entity capable of being sued; the specific medical personnel must be named); *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06- 1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); and *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)). Roberts has failed to name as a defendant any medical personnel or any staff officers who would be responsible for any constitutional violation.

While not named defendants, Roberts mentioned Nurse Karen and Dr. Martinez throughout the complaint alleging deliberate indifference and denial of medical care. Deliberate indifference by prison personnel or medical staff to an inmate's serious medical needs constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). Deliberate indifference is manifested in the provider's intentional denial of medical care or intentional interference with the treatment once prescribed. *Farmer*, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*. at 833.

Roberts's complaint also does not allege or demonstrate this level of intentional indifference by any of the medical providers under the standards set forth above. As the United States Fifth Circuit has found, to satisfy the "extremely high standard" of deliberate indifference, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't. Crim. Justice*, 239 F.3d 752, 756

(5th Cir. 2001) (internal quotation marks and citations omitted). Roberts does not allege that he was wholly ignored or denied medical care or treatment for his neck and shoulder. Instead, he acknowledges that each of his complaints were addressed by a nurse or Dr. Martinez each time he requested care or shortly thereafter. His care, as he describes it, included multiple visits with medical staff, diagnostic x-rays, an MRI, surgery, and treatment at University Medical Center. While he clearly was dissatisfied with the care he received and the methods of treatment by the various medical personnel, this type of disagreement is not enough to state a non-frivolous claim of medical indifference under the foregoing standards. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897, at *4 (5th Cir. 2024) (". . . disagreement about the recommended medical treatment is generally not sufficient.") (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)).

While also not a named defendant, Roberts testified that Nurse Jessica denied him medical care by not thinking anything was wrong when she examined him. Roberts's mere disagreement with Nurse Jessica's level of care is not a basis for liability under the Eighth Amendment. *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019); *Gobert*, 463 F.3d at 346. The Nurse's determination about the form of treatment or whether to provide treatment at all is "a classic example of a matter for medical judgment" that does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Even assuming that Nurse Jessica could have exercised a different treatment plan or erred in her professional judgment, allegations of negligence or even malpractice are insufficient to establish deliberate indifference and do not state a constitutional violation. *Id.* at 106; *Gibson*, 920 F.3d at 219-20.

Roberts alleges that Sgt. Cole, another unnamed defendant, denied him medical care and exhibited reckless negligence by witnessing him fall and taking no action, resulting in Roberts

16

having to wait until the early hours of the morning to fill out an SDE. Roberts also testified he is claiming denial of medical care because he could have gotten surgery sooner. Roberts's allegations of delay do not rise to the level of deliberate indifference or demonstrate that any delay between examinations and treatment resulted in a substantial harm or exacerbated or worsened the alleged injury. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (Mere delay in receiving medical care is not, by itself, a constitutional violation); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (same); *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (A plaintiff must show, at a minimum, deliberate indifference to his serious medical needs that results in substantial harm.) Roberts also acknowledges in his complaint that he continued to receive follow-up medical care, both at the jail and at University Medical Center.

Thus, it would be unnecessary to afford Roberts an inherently futile opportunity to file an amended complaint to name Nurse Karen, Dr. Martinez, Nurse Jessica, or Sgt. Coleman as defendants. *See*, *e.g.*, *Smith v. Terrebonne Par. Crim. Just. Complex*, No. 14-2207, 2014 WL 5780696, at *3 (E.D. La. Nov. 4, 2014) ("[T]he Court need not give plaintiff an opportunity to amend his complaint to name a proper defendant, because it is clear that his underlying claim is frivolous and/or fails to state a claim on which relief may be granted . . ."); *see also Martzen v. McLane*, 764 F. App'x 402, 403 (5th Cir. 2019) (noting that a plaintiff need not be given an opportunity to amend if he has "already alleged his best case and . . . any further amendment would not have stated a valid § 1983 claim").

Accordingly, Roberts's broad claims against all medical nurses should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

IV.   **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff Bryan Clayton Roberts's Motion for Preliminary Injunction (ECF No. 5) be **DENIED**.

It is further **RECOMMENDED** that Roberts's 42 U.S.C. § 1983 claims against defendants the State of Louisiana through the Louisiana Department of Public Safety and Corrections, Secretary Gary Wescott, Warden Travis Day, Assistant Warden Floyd Brooks, and all nurses at Rayburn Correctional Center, each in their individual and official capacities, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e as frivolous, for lack of jurisdiction, for seeking relief from an immune defendant, and/or for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this   4th   day of June, 2025.

                                                **KAREN WELLS ROBY**
                                   **UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.